IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

   v.                Case No. 20-cr-00079-wmc

DEVONERE JOHSON,

     Defendant.

---

GOVERNMENT'S DETENTION MEMORANDUM

---

The United States of America, by Scott C. Blader, United States Attorney for the Western District of Wisconsin, and by Corey C. Stephan, Assistant United States Attorney for that district, hereby submits this memorandum in support of detention. The government has moved to detain the defendant because no combination of conditions can reasonably assure his appearance, the safety of the victims, and the safety of the community, pursuant to 18 U.S.C. § 3142(f)(1). In short, the government believes defendant is a flight risk and a threat to the community.

1. **Nature and Circumstances of the Offense Charged**

The defendant, Devonere Johnson, is charged with threating violence in connection with extorting two businesses during a time of unprecedented civil unrest in Madison. In connection with the extortion, Johnson is alleged to have threatened to burn down one of the businesses, commenting to the business's employee that giving him and two individuals with him what they wanted (free food and drinks) was a small

price to pay for not having 600 people burn the bar down. With that statement, Johnson insinuated that he had the ability to get a large group of people to destroy the restaurant.

The facts, which are set forth in the criminal complaint, demonstrate the Johnson's dangerous behavior and the lengths to which he is willing to go to avoid being caught. (Dkt. 1). In the incident that led to his arrest, Johnson knew that he was "disturbing the shit out of this restaurant" and highlighted the fact that he was carrying bat. When officers contact him, Johnson resisted arrest, was ultimately taken into custody, and placed in a Madison squad car. However, Johnson escaped from the squad resulting in officers having to pursue him and take him into custody a second time.

2. **History and Characteristics of the Defendant**

Johnson, now 28, has a lengthy and extensive criminal history as described in the addendum to the pretrial services report. (Dkt. 25, pp. 4-7). The Madison Police Department also prepared a report with additional background into Johnson's criminal history, which has been provided to both the defense and pretrial services. Johnson's criminal history dates back to when he was 19 years old and his convictions range from minor drug offenses to robbery.

In 2014, at age 23, Johnson was charged in a shooting and later acquitted at trial. While acknowledging that he was found not legally culpable for this crime, there are aspects of the case that speak to his danger to the community and risk of flight. It does not appear to be disputed that Johnson was carrying a gun on a bus on October 25,

2

2014, in Minneapolis, Minnesota. The criminal complaint, which the government provided to the defense and pretrial services, reveals that Johnson and the man he shot had an ongoing dispute. Johnson's girlfriend, who was a witness to this incident, had a child in common with the man. While on the bus, the man began to fight with Johnson who replied "I'm gonna pop you, I'm gonna shoot you!" The girlfriend then heard a gunshot and the man went limp, having been paralyzed by a bullet to the neck which severed his spinal cord. After the shooting, the complaint states that Johnson purchased a Greyhound bus ticket to Chicago, Illinois. Johnson was arrested by the Chicago Police Department on November 4, 2014 and extradited back to Minnesota on a charge of First Degree Assault.

This case demonstrates several things about Johnson. First is that he is willing to carry a gun and use it. Second, Johnson will flee to avoid prosecution. Third, that even after having been charged with and acquitted of such a serious offense, he is still committing crimes against others as recently as two years after that case. It stands to reason that being charged with, going to trial, and getting acquitted in such a case would be a powerful deterrent against committing crime. Yet that was not the case with Johnson.

In 2015 Johnson, now living in Dane County, Wisconsin, was charged in case number 15CM1523 with the misdemeanor charges of being a passenger in a stolen vehicle and theft. In that case the victim was buckling her young children into their car seats in a Target parking lot. Johnson approached her, grabbed her purse, and fled in a vehicle that had been reported stolen in Illinois. On June 3, 2016, Johnson was given the

privilege of a deferred prosecution to earn his way out of a criminal conviction. However, within a week of entering that program he committed a robbery. Johnson was subsequently terminated from the deferred prosecution, convicted, and placed on probation. He also had a failure to appear in that case with a warrant issued for his arrest on February 1, 2016, although that was later quashed.

Johnson was charged with Party to the Crime of Armed Robbery and First Degree Recklessly Endangering Safety, and two counts of Misdemeanor Bail Jumping in Dane County Circuit Court case number 16CF1281. The criminal complaint reveals that on June 9, 2016, Johnson took cash and phones from the victim while his co-defendant pointed a gun at the victim. Johnson and his co-defendant left in different cars. The victims followed the co-defendant, who fired five to six shots at them. On April 27, 2017, Johnson was convicted of the robbery (felony theft from person) charge and placed on probation for five years concurrent with 15CM1523.

On February 13, 2019, Johnson failed to appear for a traffic case in Walworth County. A warrant was issued and served on him approximately a week later.

On or about June 7, 2020, Johnson defaced the law enforcement memorial during protests in downtown Madison. This memorial is on the Capitol Square and is right across the street from the YWCA where Johnson lived. He was arrested and held overnight in jail. The Wisconsin Department of Corrections elected not initiate revocation proceedings and warned Johnson not do anything illegal while protesting. Yet, even after getting arrested, spending a night in jail, the threat of revocation, and specific warning not to commit crimes during protests, approximately two weeks later

4

Johnson extorted two businesses.

   **3. Conclusion**

At the time he committed the charged extortion offenses, Johnson was on probation for crimes including robbery. This is at least the second time that he has committed a serious offense while on supervision (the first was the robbery while on bail). He has proven that he cannot be trusted on supervision in this community. While he was revoked and spent the summer in jail, that cannot be viewed as a serious enough intervention to cause him to change these well-established patterns of criminal conduct. The community supervision, and the threat of getting revoked and sent to prison, did not deter him from committing these crime.

Johnson's release plan is a return to the YWCA. Not only is this the same place that he was living at the time of the charged offenses, it is also less than two blocks away from one of the victim businesses. Given the direct and personal threats involved in the case, the government is concerned about victim intimidation and retaliation. This release plan does not adequately protect the victims, particularly with Johnson's poor history on community supervision.

For these reasons and the reasons set forth in the two Pretrial Services Reports, the government respectfully recommends detention.

Dated this 28th day of September 2020.

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By: /s/
COREY C. STEPHAN
Assistant U. S. Attorney